**UNITED STATES DISTRICT COURT**

**DISTRICT OF CONNECTICUT**

……………………………………………..
                                                    :
UNITED STATES OF AMERICA          :
                                                    :
              VS.                                  :          Criminal No. 3:03cr00158 (AWT)
                                                    :
                                                    :
ABRAHAM DABACH                          :          June 22, 2006
                                                    :
…………………………………………….

## MEMORANDUM IN AID OF SENTENCING

## I.    BACKGROUND

Abraham Dabach has pled guilty to a one count Information charging him with

passing counterfeit obligations, in violation of 18 U.S.C. §472.  A presentence report

(PSR) has been completed and Mr. Dabch is awaiting sentencing.   The Probation Office

has calculated Abraham's offense level as follows:

| | |
|---|---|
| Base Offense (§2B5.1(a) | 9 |
| Specific Offense Characteristic (§2B1.1(b)(1)(B) | 2 |
| Specific Offense Characteristic ( 2B5.1(b)(5) | 2 |
| **ADJUSTED OFFENSE LEVEL (subtotal)** | **13** |

The Defendant believes that he has met the requirements for an Adjustment for Acceptance of Responsibility under Guideline Section 3E1.1(a). statute, 18 U.S.C. section 3553(F) and moves that the Court allow for an additional two level reduction pursuant to 5C1.2.  This calculation, if allowed, would reduce his **ADJUSTED OFFENSE LEVEL to 11.**  Considering his prior record, Abraham falls within Criminal History Category 1.  Accordingly, his recommended guideline range is 8-14 months. Neither the Defendant nor the Government has objected to this guideline computation. Both parties agree that Mr. Dabach did not delay in the admitting of his offense and made a timely plea of guilty.  He made a complete disclosure to the Probation Officer and has provided the Government with a timely and extensive statement regarding his involvement in his criminal activity.  Mr. Dabach urges that this Court accept the Government's assessment of his acceptance of responsibility and grant a two level reduction in his offense level.

This memorandum is submitted in support of the Defendant's request for a downward departure and for further consideration under the directives of 18 U.S.C. section 3553(a) and of the remedial majority in United States v. Booker, 125 S. Ct. 738 (2005).  Mr. Dabach is requesting that he receive a sentence of time served followed by a period of supervised release.

## II.    ARGUMENT

**Point One:    A Downward Departure is Appropriate for a Variety of Reasons
(A Pre-<u>Booker</u> Analysis)**

Neither the Sentencing Reform Act nor the Sentencing Guidelines were designed

or intended to eliminate a sentencing court's ability to depart from an established

sentencing range in an appropriate case.  The Sentencing Commission's decision to vest

broad departure powers in the District Courts is based, in part, on its recognition of the

obvious difficulty of prescribing "a single set of guidelines that encompasses the vast

range of human conduct potentially relevant to a sentencing decision."

<u>U.S.S.G</u>. § Ch.1 Pt.A(4)(b).

The Second Circuit has frequently underscored the substantial discretion retained

by District Court Judges to depart, and the general appropriateness of exercising such

discretion.

> [W]e prefer to allow the district courts to exercise their
> sound judgment in departing from the Guidelines, rather
> than impose rigid adherence to a table of numbers.  Only by
> allowing the district courts sensible flexibility can we
> promote the equally important purposes of just punishment,
> respect for the law and adequate deterrence set forth in the
> Sentencing Reform Act.  <u>See</u> 18 U.S.C. §3553(a)(2) and
> U.S.C. 991(b).

<u>United States v. Correa-Vargas</u>, 860 F.2d 35, 40 (2d Cir. 1988); see also <u>United States v.</u>

<u>Galante</u>, 111 F.3d 1029, 1033 (2d Cir. 1977) (sentencing laws are aimed at maintaining

sufficient flexibility to permit individualized sentences when warranted by mitigating or

aggravating factors).

> ### A.  The Totality of the Circumstance Removes Abraham Dabach's Case From the Heartland

Although a sentencing Court must adhere to a sentence within the applicable

guideline range in a typical case, the Act purposefully does not eliminate all sentencing

discretion that has been historically afforded to the Court.  See Koon v. United States,

116 S. Ct. 2035, 2044 (1996).  As such, the Act recognizes the wisdom and necessity of

taking individual circumstances into account when imposing each and every sentence.

See 28 U.S.C. Section 991(b)(1)(B).  Thus, the Court may depart from the sentences

within the guideline range if it finds that there is an "aggravation or mitigating

circumstance" that the Sentencing Commission did "not adequately take into

consideration . . .  in formulating the Guidelines."  18 U.S.C. Section 3553(b)(1988);

United States v. Rogers, 979 F.2d 489, 492 (2dCir. 1992).

For example, an offender characteristic or other circumstance that is not ordinarily

relevant in determining whether a sentence should be outside the applicable guideline

range may be relevant to the determination of sentence if such characteristic or

circumstance is present to an unusual degree and therefore distinguishes the case from the

"heartland" of cases covered by the Guidelines.  U.S.S.G § 5K2.0.  This inquiry consists

of a "refined assessment of the many facts bearing on the outcome, informed by [the

Court's] vantage point and day-to-day experience in criminal sentencing." Koon v.

United States, 116 S. Ct. at 2046-47.  The Court must also consider whether some aspect

of the case "take[s] it outside the Guidelines' 'heartland' and make[s] of it a special, or

unusual, case." United States v. Merit, 988 F.2d 1298, 1306 (2d Cir. 1993), cert. denied,

508 U.S. 961, 113 S. Ct 2933, 124 L.Ed.2d 683 (1993).

In fact, it is well established in the Second Circuit that a Court may depart from

the Guidelines in imposing sentence "when a number of factors that, when considered

individually, would not permit a downward departure, combine to create a situation that

'differs significantly from the 'heartland' cases covered by the Guidelines.'" United

States v. Rioux, 97 F.3d 648, 663 (2d Cir. 1996), citing U.S.S.G. § 5K2.0 cmt.; United

States v. Jagmohan, 909 F.2d 61 (2d Cir. 1990); United States v. Somerstein, 20 F. Supp

2d 454 (E.D.N.Y. 1998).  The district court is afforded substantial discretion in

determining whether one or more factors constitutes grounds for a downward departure.

U. S. v. Galante, 111 F.3d 1029, 1035-36 (2d Cir. 1997).

Several extraordinary factors and compelling circumstances in Ms. Dabach's case

when taken both individually and jointly, warrant a downward departure from the

sentencing guideline range to permit a sentence of "time-served" followed by a period of

supervised release with conditions that would assure Mr. Dabach's continued

rehabilitation.

**1.      Mr. Dabach Has Made Extraordinary Strides Toward Rehabilitation.**

Post-offense rehabilitation has not been adequately considered by the Sentencing

Commission when formulating the Sentencing Guidelines and is therefore a valid basis

for departure.  U. S. v. Core, 125 F.3d 74, 77-78 (2d Cir. 1997) ("'awareness of one's

circumstances and the demonstrated willingness to act to achieve rehabilitation thereby

benefiting the individual and society' can remove a case from the heartland of typical

cases, thus constituting a valid basis for departure.")  U.S. v. Williams, 65 F.3d 301, 305-

07 (2dCir. 1995) (downward departure based on drug rehabilitation appropriate); U. S. v.

Ramirez, 792 F. Supp 9222, 923 (E.D.N.Y. 1992) (downward departure appropriate to

foster rehabilitation).

While Mr. Dabach's efforts at rehabilitation are not centered on entering and

remaining at a drug program, they are no less impressive and noteworthy.  It is important

to note that it has been over three years since Mr. Dabach entered his guilty plea and has

been subject to the intense scrutiny of pre-trial supervision.  The reports of the Probation

Officer are exemplary.   Mr. Dabach has apparently not been absent from any meeting,

not forgotten to make one telephone call and not done a single thing to trigger the

concern of his supervisors.  Apparently, he has not even had a parking ticket.  This time

frame of over three years is a significant period of time for the Court to measure this

individual's progress toward a goal or his commitment to his own rehabilitation.  Mr.

Dabach now has a proven track record of rehabilitation and successful supervision, which

bodes well for his continued success.  He has demonstrated the awareness of his

circumstance and the willingness to take action in order to achieve rehabilitation.  These

traits serve to benefit both himself and society.

### 2.    Mr. Dabach's work history is substantial and solid.

Mr. Dabach remains steadily employed.  The PSR indicates a lifetime of

employment to support himself and his family.  From his military service in the Israeli

Army to his current employment as delivery truck driver with Vicmarr Audio, Mr.

Dabach has worked hard and faithfully.  His employers have noted Mr. Dabach's work

ethic, honesty and trustworthiness.  It is important to note that it was during a period of

unemployment and while he was out of the country, that Mr. Dabach committed this

crime as a means to help his family.  While this is not offered to excuse his conduct, Mr.

Dabach's words and actions subsequent to his guilty plea indicate his deep remorse and

his commitment to the corrective action needed to insure that this will never happen

again.

### 3.    Mr. Dabach's family responsibilities are immense and have changed since the entry of his guilty plea.

Mr. Dabach has grown children from a previous marriage.  On October 5, 1990, he married his present wife Gelsi. She is a native of the Philippines and has adult children living there.  This marriage has been a rocky one. They are presently separated and anticipating a divorce. Gelsi Dabach is ill with breast cancer for the second time.  She left the family home when she became sick and when she reportedly had difficulty caring for Sean, the 15 year-old son, issue of this marriage.   Mr. Dabach now has become the sole provider both financially and emotionally for this child.  Sean suffers from Attention Deficit Disorder and takes Ritalin for this condition.  Mr. Dabach reports that while Sean may at times be difficult, he is good boy that tries hard in school but struggles with his schoolwork.  Sean has also had difficulty with the absence of his mother from the family home.   If Mr. Dabach is sentenced to a period of incarceration, Sean stands to lose the care and attention of both parents and Mr. Dabach feels that this would really be devasting to his son.   Their relationship has strengthened as a result of the abandonment of Gelsi, but Mr. Dabach believes that Sean's difficulties academically and socially will only intensify should he go to prison.   Mr. Dabach's accountability for his actions include the devastating effect that his conviction has on his minor son.  He cannot believe

that he would have risked any harm to his son for the small benefit of some material

goods.

Taken together then, Mr. Dabach urges the Court to consider that there exists, in

this case, factors that takes it outside the heartland and which warrant a downward

departure from the sentencing guideline range.

**Point Two:  The Extent of the Departure**

Counsel suggests that the Court consider a sentence of time served followed by a

term of supervised release with conditions that Mr. Dabach remains employed.  Such a

sentence would fully serve all of the purposes of a criminal sanction while at the same

time permitting Mr. Dabach to continue to provide for the financial and emotional needs

of his son and to further his efforts of successful rehabilitation.

**Point Three:   A Sentence below the advisory sentencing range is warranted for a
                number of reasons.  (A post Booker analysis)**

In Booker, the Supreme Court held that Blakely v. United States, 124 S. Ct. 2531

(2004), applied to the federal sentencing guidelines, and that the Sixth Amendment's jury

trial guarantee prevented judges from finding facts that exposed a defendant to increased

prison time.  To remedy this, a different majority of the Court removed the provision of

the Sentencing Reform Act that made the guidelines mandatory, 18 U.S.C. Section

3553(b).  This majority of the Court held that the sentencing courts must still consider the

guideline range but must also consider the other directives of Section 3553(a).  It

becomes the further function of the sentencing judge to resolve any conflicts between the

guidelines and the other factors set forth in Section 3553(a).  It seems apparent that since

the guidelines are not binding, there should not be a need to use the old departure

analysis, but Judge Newman, in the Second Circuit's first post <u>Booker</u> sentencing appeal,

suggests that, "[I]n order to fulfill this statutory duty to 'consider' the Guidelines, a

sentencing judge will normally have to determine the applicable Guidelines

range"…..and consideration of applicable policy statements." <u>United States v. Crosby,</u>

Docket No. 03-1675, February 2005.  Judge Newman continues and identifies several

essential aspects of <u>Booker</u> that concern the sentencing process:

> First, the Guidelines are no longer mandatory. Second, the
> sentencing judge must consider the Guidelines and all of
> the other factors listed in section 3553(a).  Third,
> consideration of the Guidelines will normally require
> determination of the applicable Guidelines range, or at least
> identification of the arguably applicable ranges, and
> consideration of applicable policy statements.  Fourth, the
> sentencing judge should decide, after considering the
> Guidelines and all the other factor set forth in section
> 3553(a), whether (I) to impose the sentence that would
> have been imposed under the Guidelines, i.e., a sentence
> within the applicable Guidelines range or within
> permissible departure authority, or (ii) to impose a non-
> Guidelines sentence.  Fifth, the sentencing judge is entitled

> to find all the facts appropriate for determining either a
> Guidelines sentence or a non-Guidelines sentence.

United States v. Crosby, Docket No. 03-1675 (2005), pp. 24-25.

For as long as the ultimate sentence ordered is reasonable and carefully supported by

reasons in compliance with the Section 3553(a) factors, the sentencing court can sentence

Abraham Dabach as an individual, separate and distinct from the 8-14 month range of his

guideline calculation.   Mr. Dabach argues that he should receive a sentence well below

the 8-14 month range and that to do so would be "plainly reasonable".

        In considering the factors of Section 3553(a), the Court must sentence Abraham

Dabach to a sentence sufficient but not greater than necessary to comply with the

purposes of the statute.  Passing counterfeit currency is obviously a serious offense and

there needs to be a consequence for the offense.  However, Mr. Dabach's incredible

efforts at his rehabilitation and the need for him to be present to care for and to guide his

son would seem to indicate that he would be an appropriate candidate for supervised

release.  Supervised release would provide the extra support and accountability that

would insure that Mr. Dabach would not offend in the future.  His past period of pre-trial

supervision is highly indicative of his present prospects for success.  He is vigorously

taking on his life and this "correctional treatment" should continue to be self-directed and

need not be provided for in an institutional setting.

## III.    CONCLUSION

For the foregoing reasons, the Defendant, Abraham Dabach, respectfully requests

that the Court depart downward from the recommended advisory sentencing range of 8-

14 months in prison.

RESPECTFULLY SUBMITTED
THE DEFENDANT, Abraham Dabach


By__/s/_____
      John M. Andreini
      44 Capitol Avenue
      Suite 402
      Hartford, CT 06106
      Federal Bar #ct01921
      TEL:   (860) 525-9447
      FAX:   (860) 246-3727

## **CERTIFICATION**

I hereby certify that a copy of the foregoing has been mailed/hand-delivered to all

counsel of record and pro se parties this 25$^h$ day of June, 2006:


Anastasia Enos King, Esq.
Assistant United States Attorney
Federal Building
450 Main Street
Hartford, CT 06103


The Honorable Alvin W. Thompson
United States District Court
450 Main Street
Hartford, CT 06103
(*Courtesy Copy*)



/s/_____
John M. Andreini